UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | |
| Plaintiff, | No. 2:16-cv-00851 TLN DB |
| v. | |
| ANDREW JOHN COLEMAN, et al. | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

This matter came before the court on February 10, 2017, for hearing of plaintiff J & J Sports Productions, Inc.'s ("plaintiff") motion for default judgment against defendants Andrew John Coleman, Gregory Spencer Kinsman, and John Robert Sloss, individually and doing business as Right Eye Brewing Company ("defendants"). Thomas P. Riley appeared telephonically on behalf of plaintiff. No appearance was made by or on behalf of any defendant.

Oral argument was heard and the motion was taken under submission. Having considered all documents submitted regarding the motion and hearing oral argument, the undersigned recommends plaintiff's motion for default judgment be granted as follows:

PROCEDURAL BACKGROUND

Plaintiff initiated this matter by filing a complaint on April 25, 2016, and paying the required filing fee. (ECF No. 1.) In the complaint, plaintiff alleges that it was granted exclusive commercial distribution rights to *"The Fight of the Century" Floyd Mayweather Jr. v. Manny*

1

*Pacquiao Championship Fight Program*, ("*Program*"), telecast nationwide on May 2, 2015. Defendants are the owners, operators, licensees, permittees, or persons in charge of the commercial establishment doing business as Right Eye Brewing Company operating at 221 Benton Ct., Suisun City, CA 94585. Plaintiff's complaint alleges that defendants personally, or through their employees, unlawfully intercepted and broadcast the *Program* without permission to do so. The complaint alleges violations of 47 U.S.C. § 605 and § 553, conversion, and a violation of California Business and Professional Code § 17200. (Compl. (ECF No. 1) at 5-10.[1])

On August 15, 2016, plaintiff filed a request for entry of defendants' default. (ECF No. 8.) On August 16, 2016, default was entered against the defendants. (ECF No. 9.) Consequently, on December 30, 2016, plaintiff filed a motion for default judgment. (ECF No. 11.) On January 4, 2017, plaintiff filed a notice to reschedule the hearing on the motion for default judgment. (ECF No. 13.) Defendants were timely served with copies of the complaint, the request for entry of default, the motion for default judgment, and the notice to reschedule the hearing on the motion for default judgment. (ECF Nos. 4, 5, 6; ECF No. 8 at 3; ECF No. 11 at 4; ECF No.13 at 4.) Nonetheless, no defendant has answered or otherwise appeared in these proceedings.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for default judgment. Upon entry of default, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

2

without a damages hearing. Dundee, 722 F.2d at 1323. Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court considers a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Among them are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## FACTUAL ALLEGATIONS

The relevant facts included in plaintiff's complaint, taken as true, establish the following: (1) plaintiff is a California corporation engaged in the commercial distribution and licensing of sporting events; (2) defendants are owners, operators, licensees, permittees, persons in charge, or individuals with dominion/control/oversight/management of Right Eye Brewing Company at 221 Benton Ct., Suisun City, CA 94585; (3) pursuant to contract, plaintiff had exclusive nationwide distribution rights to "*The Fight of the Century" Floyd Mayweather Jr. v. Manny Pacquiao Championship Fight Program*, telecast nationwide on May 2, 2015; (4) plaintiff entered into various sublicensing agreements with commercial entities, granting each the right to publish the *Program* within their respective commercial establishments; (5) as a commercial distributor and licensor of sporting events, plaintiff expended substantial monies marketing and transmitting the *Program* to customers; (6) with full knowledge that the *Program* was not to be intercepted, received, published, divulged, displayed, or exhibited by unauthorized entities, defendants, either through their actions of the actions of their employees or agents, unlawfully intercepted, received, published, divulged, displayed, or exhibited the *Program* on May 2, 2015, at Right Eye Brewing Company; (7) said unauthorized interception, reception, publication, exhibition,

divulgence, display, or exhibition by defendants was done willfully and for purposes of direct or indirect commercial advantage or financial gain; (8) the actions of defendants violated 47 U.S.C. § 605, *et seq.* and 47 U.S.C. § 553, *et. seq.*; (9) by reason of these violations, plaintiff has a private right of action under both statutes; (10) defendants, by their actions, tortiously obtained possession of the Program and wrongfully converted it for their own use and benefit; (11) defendants' tortious conversion caused plaintiff economic distress and financial loss; (12) by reason of defendants' tortious conversion, plaintiff is entitled to damages. (Compl. (ECF No. 1) at 2-8.)

## ANALYSIS

**1. The Eitel Factors Favor Entry of Default Judgment**

Examining the complaint in light of the Eitel factors, the undersigned finds the factors weigh in favor of granting plaintiff's motion for default judgment.

**a. Possibility of Prejudice to the Plaintiff**

The first Eitel factor contemplates the possibility of prejudice to the plaintiff if a default judgment is not entered. Eitel, 782 F.2d at 1471. Prejudice may be shown where failure to enter a default judgment would leave plaintiffs without a proper remedy. Landstar Ranger, Inc. v. Parth Enterprises, Inc., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (citing Pepsico, Inc. v. California Security Cans, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2010)).

In the instant case, it is alleged that defendants unlawfully intercepted and broadcast plaintiff's *Program* and, as a result, plaintiff suffered an injury in the form of economic distress and financial loss. (Compl. (ECF No. 1) at 2-8.) Since defendants failed to appear in this action, denial of a default judgment would leave plaintiff no remedy for this injury. Accordingly, the first Eitel factor weighs in favor of granting default judgment on behalf of the plaintiff.

**b. Sufficiency of the Complaint and the Likelihood of Success on the Merits**

The second and third Eitel factors jointly examine whether the plaintiff has pleaded facts sufficient to establish and succeed upon its claims. Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1055 (2010). Since plaintiff's motion for default judgment seeks to recover only on its Section 605 and conversion claims, the elements of these claims and the facts alleged

to support them are assessed below. (Mot. Def. Judg. (ECF No. 11) at 3.)

### i. Violation of 47 U.S.C. § 605

"Liability under Section 605 requires proof that a defendant has '(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff.'" California Satellite Systems v. Seimon, 767 F.2d 1364, 1366 (9th Cir. 1985) (quoting National Subscription Television v. S & H TV, 644 F.2d 820, 826 (9th Cir. 1981)). The Ninth Circuit has determined that 'communications' protected by Section 605 include satellite television signals. DirecTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008). Where direct evidence of a defendant's satellite signal piracy is unavailable, circumstantial evidence may suffice. Id.

In the complaint, plaintiff establishes that it had exclusive ownership of commercial distribution rights to the *Program*. (Compl. (ECF No. 1) at 5.) Plaintiff has provided evidence that defendants were never granted a sublicense to the *Program*. (Gagliardi Aff. (ECF No. 11-4) at 3.) Nevertheless, an auditor visiting Right Eye Brewing Company on May 2, 2015, witnessed the *Program* being broadcast on a television within the establishment. (Decl. Aff. (ECF No. 11-2) at 3.) Under such circumstances, it can be inferred that the broadcast was possible only due to an unlawful interception of the *Program*. See J & J Sports Prods. Inc. v. Barajas, No. 115-cv-01733-TLN-JLT, 2016 WL 1110446, at *3 (E.D. Cal. Mar. 22, 2016) (finding a cause of action under Section 605 even though plaintiff did not allege a precise method of interception by defendants). Thus, the court finds that the facts alleged by plaintiff sufficiently support a cause of action under Section 605.

### ii. Conversion

"To establish conversion, a plaintiff must demonstrate (1) ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by wrongful act, and (3) damages." Bank of New York v. Fremont General Corp., 523 F.3d 902, 914 (9th Cir. 2008). Here, again, plaintiff alleges it had exclusive ownership of the commercial distribution rights to the *Program*. (Compl. (ECF No. 1) at 5.) Plaintiff also alleges the *Program* was intercepted and broadcast by

defendants at Right Eye Brewing Company without a valid sublicense, thus showing disposition of plaintiff's property rights. (Id. at 5-6.)

Plaintiff fails to allege facts regarding a maximum capacity for Right Eye Brewing Company. However, plaintiff's investigator indicates that seven people were in the establishment at the time of the *Program*. The rate card provided by plaintiff indicates the minimum sublicensing fee for establishments with a 1-100 person capacity would have been $3,000. (Gagliardi Aff. (ECF No. 11-4) at 3.) Thus, at a minimum, plaintiff has established damages for conversion in the amount of $3,000. See Joe Hand Promotions, Inc. v. Dhillon, No. 2:15-cv-1108-MCE-KJN, 2015 WL 7572076, at *6 (E.D. Cal. Nov 25, 2015) (granting damages based on the minimum sublicensing fee). Given these facts, the court finds that plaintiff has successfully stated a claim of conversion against defendants.

   **c. Sum of Money at Stake**

Under the fourth Eitel factor "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." PepsiCo, Inc., 238 F.Supp.2d at 1176-77. Where a large sum of money is at stake, this factor disfavors default judgment. Eitel, 782 F. 2d. at 1472. Here, the sum of money at stake is moderate. Plaintiff seeks $3,000 in compensatory damages for conversion, an amount equal to what defendants would have paid to sublicense the *Program*. (Memo. Pts. Auths. (ECF No. 11-1) at 19.) Plaintiff also seeks $6,000 in statutory damages and $18,000 in enhanced damages under Section 605, amounts that fall well below the maximum awards permitted under the statute. (Id. at 13.)

While the amount of damages requested by plaintiff is not insignificant relative to the seriousness of defendants' conduct, Section 605 grants courts discretion in awarding damages. 47 U.S.C. § 605(e)(3)(C). As discussed below, the undersigned does not recommend awarding the full amount of damages requested by plaintiff. Therefore, this factor does not weigh against default judgment.

////

////

////

### d. Possibility of Disputed Material Facts

The fifth Eitel factor examines whether a dispute exists regarding material facts. Vogel v. Rite Aid Corp., 992 F.Supp. 998, 1012 (2014) (citing PepsiCo, 238 F.Supp. 2d. at 1177; Eitel, 782 F.2d. at 1471-72). Defendants failed to file an answer or otherwise appear at any point in these proceedings, and a default was consequently entered against them. (ECF No. 9.) As a result of the default, all well-pleaded factual allegations made by plaintiff are now taken as true. TeleVideo Systems, 826 F.2d at 917 (citing Geddes, 559 F.2d at 560). Thus, there is no possible dispute of material fact that would preclude the granting of a default judgment in plaintiff's favor.

### e. Whether the Default Was Due to Excusable Neglect

The sixth Eitel factor contemplates whether defendants' default was due to excusable neglect. PepsiCo, 238 F.Supp.2d at 1177; Eitel, 782 F.2d at 1471-72. This factor gives consideration to due process, ensuring that defendants are "given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered." Philip Morris USA, Inc. v. Castworld Productions, 219 F.R.D. 494, 500 (2003) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). In the instant case, there is significant evidence that defendants were given sufficient notice of these proceedings.

As noted above, defendants were properly served with a copy of the complaint. (ECF Nos. 4, 5, 6.) Defendants were also served with copies of plaintiff's request to enter default, plaintiff's motion for default judgment, and plaintiff's notice to reschedule the hearing on the motion for default judgment. (ECF No. 8 at 3; ECF No. 11 at 4; ECF No.13 at 4.) In light of the multiple notices delivered to defendants, it is unlikely that their failure to appear in this action is due to excusable neglect. As a result, this factor does not weigh against default judgment.

### f. Policy of Deciding Cases on the Merits

The seventh Eitel factor emphasizes the "general rule that default judgments are ordinarily disfavored." Eitel 782 F.2d at 1472. "Cases should be decided upon the merits whenever reasonably possible." Id. (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811,

814 (9th Cir. 1985)). A failure to appear in these proceedings has rendered a decision on the merits impossible. Thus, this factor does not weigh against default judgment.

**2. Terms of Judgment**

The court, having found default judgment is appropriate, must now address the issue of damages. After considering the plaintiff's briefings and the record in this case, including the affidavits and declarations submitted by plaintiff, the undersigned recommends an award of statutory damages pursuant Section 605 in the amount of $5,000. However, the undersigned does not recommend enhanced damages pursuant Section 605 or damages for conversion.

**a. Damages Under 47 U.S.C. § 605**

For each violation of Section 605 a plaintiff may recover an award of statutory damages "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition to statutory damages, Section 605 further provides that the court may award enhanced damages up to $100,000 "where it finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. 605(e)(3)(C)(ii). Courts have significant discretion in determining the appropriate amount of damages to award. DirecTV Inc. v. Le, 267 Fed.Appx. 636, 636 (9th Cir. 2008).

**i. Statutory Damages**

In its motion for default judgment, plaintiff requests $6,000 in statutory damages. (Mot. Def. Judg. (ECF No. 11) at 3.) The court may consider a number of factors in its determination of statutory damages, such as promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of televisions used for the broadcast, and whether a premium was charged on food and drink. J& J Sports Productions, Inc. v. Cervantes, No. 1:16-cv-00485-DAD-JLT, 2016 WL 6955043, at *4 (E.D. Cal. Nov. 28, 2016) (citing J & J Sports Productions, Inc. v. Sorondo, No. 1:11-cv-00411-AWI-SMS, 2011 WL 3917391, at *4 (E.D. Cal. Sept. 6, 2011)). Courts may also consider whether or not violators are repeat offenders. Kingvision Pay-Per-View, Ltd. v. Backman, 102 F.Supp. 2d 1196, 1198-99 (N.D. Cal. 2000). Ultimately, statutory damages should be proportional to the violation and should not over-compensate the

plaintiff. Id. at 1198.

As noted above, the affidavit provided by plaintiff's investigator never specifies the total capacity of the Right Eye Brewing Company. However, the investigator does state that there were only seven people inside the establishment when the *Program* was shown. (Decl. Aff. (ECF No. 11-2) at 3.) The investigator also indicates that the *Program* was shown on only one television, and that this television was not a "big screen." (Id. at 6.) Plaintiff provides no evidence that defendants engaged in promotional advertising. Nor does plaintiff allege that defendants imposed a cover charge or charged a premium on food or drink on the night of the *Program*. Finally, there is no evidence in the record that defendants are repeat offenders.

While the circumstances of defendants' violation are not egregious, the court is mindful of the deterrent purpose of Section 605. J & J Sports Productions, Inc. v. Orellana, No. 08-05468 CW, 2010 WL 1576447, at 3* (N.D. Cal. Apr 19, 2010). Balancing the facts of this case with the need for deterrence, the undersigned will recommend an award of statutory damages in the amount of $5,000. This amount is proportional to the violation and serves to adequately deter future violations. Furthermore, it aligns with statutory damages awarded by other judges in this district under similar circumstances. See J & J Sports Prods., Inc. v. Ocampo, No. 1:16-cv-00559-LJO-JLT, 2016 WL 6898753 (E.D. Cal. Nov. 22, 2016) (awarding $5,000 in statutory damages where defendant broadcast pirated program licensable at $3,000 on two televisions to 25 people); J & J Sports Productions, Inc. v. Angulo, No. 2:14-cv-2666-KJM-AC-TEMP, 2015 WL 9165840 (E.D. Cal. Dec. 17, 2015) (awarding $5,000 in statutory damages where defendant broadcast pirated program licensable at $2,200 on one television to 21 people); J & J Sports Productions, Inc. v. Adams, No. 2:13-cv-1077-KJM-AC, 2015 WL 5092801 (E.D. Cal. Aug 28, 2015) (awarding $5,000 in statutory damages where defendant broadcast pirated program licensable at $2,200 on one television to 22-29 people); Joe Hand Promotions, Inc. v. Gonzalez, No. 1:13-cv-01485 AWI, 2015 WL 507397 (E.D. Cal. Feb 6, 2015) (awarding $3,400 in statutory damages when defendant broadcast pirated program licensable at $1,600 to 46 people); J & J Sports Productions, Inc. v. Morales, No. 1:10-cv-01694-AWI, 2012 WL 761670 (E.D. Cal. Mar 8, 2012) (awarding $4,400 in statutory damages where defendant broadcast pirated program

licensable at $2,200 to 14 people).

### ii. Enhanced Damages

In addition to statutory damages, plaintiff seeks enhanced damages in the amount of $18,000. (Mot. Def. Judg. (ECF No. 11) at 3.) Plaintiff alleges: "Said unauthorized interception… and/or exhibition by each of the [d]efendants was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain." (Compl. (ECF No. 1) at 6.) Thus by defaulting, plaintiff argues, defendants have admitted their unlawful actions were committed willfully and for financial gain. (Memo. Pts. Auths. (ECF 11-1) at 16.)

However, "[t]he mere assertion that [d]efendant acted willfully is insufficient to justify enhanced damages." Sorondo, 2011 WL 3917391 at *4 (citing Kingvision, 102 F.Supp.2d at 1198). To adequately state a claim against a defendant, a plaintiff must set forth the legal and factual basis for its claim. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

As noted above, there is no evidence in the record that defendants advertised the *Program*, charged a cover, or charged a premium for food or drink. Furthermore, defendants are not repeat offenders. Under such circumstances, the undersigned declines to recommend awarding enhanced damages. See Kingvision, 102 F.Supp.2d at 1198.

### b. Damages for Conversion

Plaintiff also requests damages in the amount of $3,000 for conversion. (Mot. Def. Judg. (ECF No. 11) at 3.) However, the statutory damages provisions within Section 605 serve not only a deterrent function, but also a compensatory function. Joe Hand Prod., Inc. v. Behari, No. 2:12-cv-1522-KJM-AC, 2013 WL 1129311 at *8 (E.D. Cal. March 18, 2003.) A statutory award of $5,000 under Section 605 sufficiently compensates plaintiff, such that an additional award of damages for conversion would be duplicative. Id. at *3 n.2. As such, the undersigned does not recommend awarding damages for conversion.

////

CONCLUSION

Having considered the Eitel factors, the undersigned finds they weigh in favor of a default judgment for plaintiff. The undersigned finds that an award of statutory damages in the amount of $5,000 is appropriate to compensate plaintiff and deter future violations by defendants. However, because there is no evidence of willfulness on the part of defendants, and because plaintiff has been sufficiently compensated by statutory damages, the undersigned does not recommend awarding enhanced damages or damages for conversion.

For the reasons set forth above, IT IS RECOMMENDED that:

1. Plaintiff's December 30, 2016 motion for default judgment (ECF No. 11) be granted.
2. Judgment be entered against defendants in the sum of $5,000; and
3. This case be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen (14) days after these findings and recommendations are filed, any party may file written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 9, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:rw
DB/orders/orders.civil/j&jsports0851.mdj.f&rs